# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ASSUREDPARTNERS OF NEVADA, LLC, | ) Case No.: 3:21-cv-00433-RCJ-CLB )  ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| L/P INSURANCE SERVICES, LLC; DEANNA DEHART; COURTNEY PINO; CHRISTOPHER "BRYCE" WARNER; GIGI BRADLEY; and HEATHER PIATT; | ) ) ) ) ) |
| Defendants. | ) ) |

### AGREED PERMANENT INJUNCTION AND ORDER OF DISMISSAL

AND NOW, upon consideration of the parties' agreement to resolve the above-captioned litigation, including the claims asserted by Plaintiff AssuredPartners of Nevada, LLC ("AP") against Defendants L/P Insurance Services, LLC ("LP"); Deanna DeHart; Courtney Pino; Christopher "Bryce" Warner; Gigi Bradley; and Heather Piatt (together, the "Individual Defendants") (collectively with LP, the "Defendants"), and with Defendants' consent to the entry of this Order without such consent being deemed an admission of liability by Defendants, it is hereby ORDERED that:

    1.    Defendants are permanently enjoined and restrained from, directly or indirectly, and whether alone or in concert with others, including anyone acting in concert or participation with Defendants, specifically including any agent, employee, officer, or representative of Defendants:

        a.    Disclosing, disseminating, distributing, leaking, publishing, selling or transferring to, or sharing with any person whatsoever, any of AP's "**Confidential Information**" (as defined below in Paragraph 1.c) in Defendants'

1

possession, custody, or control, as well as any Confidential Information in the Individual Defendants' personal knowledge that they learned and acquired through their employment with AP, including, but not limited to, the oral disclosure of this Confidential Information to other LP employees or third parties; and

      b.    Using for any purpose any of AP's Confidential Information (as defined below in Paragraph 1.c) in Defendants' possession, custody, or control, as well as any Confidential Information in the Individual Defendants' personal knowledge that they learned and acquired through their employment with AP, including, but not limited to, non-public information the Individual Defendants learned about AP's clients and prospects as a result of working and interacting with such clients and prospects during the Individual Defendants' employment with AP. Such non-public information within the Individual Defendants' personal knowledge includes, but is not limited to, their non-public, intrinsic knowledge of AP clients' histories, preferences, pain points, business wants and needs, prior experiences with AP, and other non-public information learned about clients and prospects through meetings, calls, and other interactions with clients and prospects, while employed with AP. Paragraphs 1.a and 1.b do not apply to information in the Individual Defendants' personal knowledge pertaining to the "**Released Clients**," as identified in Exhibit E to the Parties' Settlement Agreement, incorporated herein by reference without attaching the list to this Order.

      c.    For purposes of this Order, "**Confidential Information**" is defined as all confidential, proprietary, and/or non-public information, whether or not in a written or recorded form, concerning the business or affairs of AP, including but not limited to, non-public information concerning AP's clients, prospective clients, acquisition targets, vendors, insurance carriers, policy forms, rating information, expiration dates, and/or contracts or arrangements; AP's financial condition, results of operations, marketing plans, business plans, operations, pricing, promotions, and business strategies and methods; and the services and products offered by AP to its clients or prospective clients, including but not limited to, policy forms, rating information,

2

FP 42858199.1

expiration dates, information on risk characteristics, and information concerning insurance markets for large or unusual risks.

2. Subject to the two exceptions at Paragraphs 2.a and 2.b below, through and including September 30, 2023 (the "**Restricted Period**"), Defendants are enjoined and restrained from, directly or indirectly, and whether alone or in concert with others, including anyone acting in concert or participation with Defendants, specifically including any agent, employee, officer, or representative of Defendants, offering, selling, soliciting, quoting, placing, providing, renewing, or servicing any insurance product or service to, or on behalf of, any entity or employer identified on the list of Restricted Clients agreed to by the Parties, which the Parties agree is Exhibit D to the Parties' Settlement Agreement and shall be incorporated herein by reference without attaching the list to this Order. The Parties agree that Restricted Clients do not include the Released Clients, as identified in Exhibit E to the Parties' Settlement Agreement, also incorporated herein by reference without attaching the list to this Order. The Individual Defendants may offer, sell, solicit, quote, place, provide, renew, or service any employee benefits insurance products or services to the Released Clients.  To be clear, subject to the two exceptions at Paragraphs 2.a and 2.b below, the restriction in this Paragraph shall not be interpreted or construed to permit Defendants during the Restricted Period to accept any business from any Restricted Clients (other than the Released Clients) regardless of whether the Restricted Client was solicited by any of the Defendants.

    a. Exception for mutual clients (where AP is the current broker of record for the client's employee benefits insurance and LP is the current broker of record for the client's property & casualty ("**P&C**") insurance) (the "**Mutual Client Exception List**," as identified in Exhibit D of the Parties' Settlement Agreement, and incorporated herein by reference without attaching the list to this Order): Defendants will not, directly or indirectly, during the Restricted Period, offer, sell, solicit, quote, place, provide, renew, or service any employee benefits insurance products or services to the Mutual Clients, but LP may, without any of the Individual Defendants' direct or indirect

3

1  involvement, assistance, or support, offer, sell, solicit, quote, place, provide, renew, or
2  service all P&C lines to these Mutual Clients.
3        b.    Exception for pre-existing clients of LP that are on the Restricted
4  Clients list (where LP is the current broker of record for any of the client's insurance and
5  the client is on the Restricted Clients list as a prospect of AP) (the "**Prior LP Client**
6  **Exception List**," as identified in Exhibit D of the Parties' Settlement Agreement, and
7  incorporated herein by reference without attaching the list to this Order): Where LP is
8  the current broker of record for a Restricted Client and held that specific account as of
9  October 1, 2021, LP is not required to sever its existing relationship with the client with
10 respect to the particular line(s) of business for which LP is currently and was the client's
11 broker of record as of October 1, 2021. LP may, without the Individual Defendants' direct
12 or indirect involvement, assistance, or support, offer, sell, solicit, quote, place, provide,
13 renew, or service the specific line(s) of business for which LP is currently and was the
14 Restricted Client's broker of record as of October 1, 2021 as identified on the Prior LP
15 Client Exception List. However, during the Restricted Period, all Defendants are enjoined
16 and restrained from, directly or indirectly, selling, soliciting, quoting, placing, providing,
17 renewing, or servicing any other line(s) of business for which LP was not the Restricted
18 Client's current broker of record as of October 1, 2021 with any client on the Prior LP
19 Client Exception List.
20    3.    During the Restricted Period, Defendants are enjoined and restrained
21 from, directly or indirectly, and whether alone or in concert with others, including anyone
22 acting in concert or participation with Defendants, specifically including any agent,
23 employee, officer, or representative of Defendants, taking any action intended, or
24 reasonably likely, to cause any vendor, insurance carrier, wholesale broker, or Restricted
25 Client to cease or refrain from doing business with AP.
26    4.    During the Restricted Period, Defendants are enjoined and restrained
27 from, directly or indirectly (including through third-party recruiters), and whether alone
28 or in concert with others, including anyone acting in concert or participation with

4

Defendants, specifically including any agent, employee, officer, or representative of Defendants, soliciting, hiring, or seeking to induce any of AP's Nevada employees to terminate such employee's employment with AP for any reason. This section applies only to individuals employed at AP's Nevada offices as of December 8, 2021, employees actively employed by AP's Nevada offices between October 1, 2021 and September 30, 2023, and former AP employees at AP's Nevada offices whose employment with AP has been terminated for less than 60 days.

5. To the extent not already completed per the Court's prior Temporary Restraining Order issued on October 1, 2021 (ECF No. 17), Defendants are ordered to return to AP all of AP's Confidential Information. To effectuate the complete return of this information, Defendants shall follow the following return and deletion procedure at LP's expense:

   a. With respect to the four (4) USB devices that Defendants turned over to Haystack, the neutral forensic examiner engaged by the Parties in this matter, and that are presently in Haystack's possession, Defendants' counsel shall, within seven (7) business days of the issuance of this Order, provide Haystack a list of files on each of the USB devices that Defendants believe in good faith are personal files of the Individual Defendants, files belonging to LP, or files that do not belong to AP or do not otherwise contain AP's Confidential Information ("**USB Retained Files List**").

      (1) Promptly upon submission of the USB Retained Files List to Haystack, Haystack shall permanently wipe from the USB devices all files that are not on this list, and Haystack shall certify to the Parties that such deletion is complete.

      (2) AP shall have the right, but not the obligation, to challenge Defendants' designation of files on the USB Retained Files List within thirty (30) business days. The Parties shall meet and confer in good faith regarding any dispute as to whether any files on the USB Retained Files List should also be permanently wiped as belonging to AP or otherwise containing AP's Confidential Information, and if the Parties reach impasse after exhausting reasonable meet-and-confer efforts within seven

(7) business days of AP's initiating of the meet and confer process, counsel may request a telephonic conference with Judge Jones to resolve the dispute. Should the dispute be resolved by determining that the files should be permanently deleted as well, then such files shall be permanently wiped from the USB devices by Haystack, and Haystack shall certify to the Parties that such deletion is complete. The Court will award actual attorneys' fees and costs to the prevailing party upon resolution of any such dispute.

(3) Upon Haystack's deletion of all identified AP files from the USB devices, and if there are no further disputes regarding whether other files on these devices belong to AP, Haystack shall promptly return the USB devices to the Defendants.

b. With respect to the ten (10) other devices previously imaged by Haystack in this matter, Defendants shall, within the deadline provided herein, cooperate in good faith in providing Haystack access to these ten (10) devices for purposes of permanently wiping from these devices all files belonging to AP or otherwise containing AP's Confidential Information.

(1) Defendants' counsel shall, within twenty-one (21) calendar days of the issuance of this Order, provide Haystack a list of files on each of the ten (10) devices that Defendants believe in good faith are personal files of the Individual Defendants, files belonging to LP, or files that do not belong to AP or do not otherwise contain AP's Confidential Information ("**Other Retained Files List**").

(2) Within three (3) business days of Defendants' submission of the Other Retained Files List to Haystack, Defendants shall provide Haystack with access to all ten devices, and Haystack shall promptly proceed to permanently wipe from these ten devices all files that are not on the Other Retained Files List, and Haystack shall certify to the Parties that such deletion is complete.

(3) AP shall have the right, but not the obligation, to challenge Defendants' designation of files on the Other Retained Files List within thirty (30) business days. The Parties shall meet and confer in good faith regarding any dispute as

6

1    to whether any files on the Other Retained Files List should also be permanently wiped
2    as belonging to AP or otherwise containing AP's Confidential Information, and if the
3    Parties reach impasse after exhausting reasonable meet-and-confer efforts within seven
4    (7) business days of AP's initiating of the meet and confer process, counsel may request
5    a telephonic conference with Judge Jones to resolve the dispute. Should the dispute be
6    resolved by determining that the files should be permanently deleted as well, then such
7    files shall be permanently wiped from the applicable devices by Haystack, and Haystack
8    shall certify to the Parties that such deletion is complete. The Court will award actual
9    attorneys' fees and costs to the prevailing party upon resolution of any such dispute.

10              c.      With respect to emails sent or received by any of the Individual
11   Defendants using any of their personal email accounts that contain or attach any of AP's
12   Confidential Information, the Individual Defendants' counsel (or its e-discovery vendor)
13   shall, within twenty-one (21) calendar days of the issuance of this Order, access the
14   Individual Defendants' personal email accounts and in good faith search for and then
15   permanently wipe all emails that contain or attach any of AP's Confidential Information,
16   and then certify to AP's counsel that such deletion is complete.

17              d.      With respect to documents belonging to AP or otherwise
18   containing AP's Confidential Information that were emailed by any of the Individual
19   Defendants to any LP email account, LP's counsel (or its e-discovery vendor) shall,
20   within twenty-one (21) calendar days of the issuance of this Order, in good faith search
21   for all emails any of its employees received from any of the Individual Defendants that
22   attached any of AP's documents or contain any of AP's Confidential Information, and to
23   the extent this search yields results, LP shall search for any forwarding or copying of
24   such emails. Within twenty-one (21) calendar days of the issuance of this order, LP's
25   counsel shall certify to AP's counsel that all copies of such emails (including any backup
26   or archive copy) have been permanently wiped from LP's email servers and from the
27   local LP-issued computer of any LP employee who received such emails and their
28   attachments.

   e. After completion of the return and deletion procedure outlined above, if any of the Defendants discover that they are, or any of them is, in possession, custody, or control of any Confidential Information in paper or electronic form, Defendants shall immediately notify AP's counsel of record identifying the specific information and take all steps necessary to ensure that (i) the information is returned to AP following the same process outlined above, and (ii) all such information is permanently deleted and no longer in Defendants' possession, custody, or control.

6. LP is responsible for paying for all fees, expenses, and any other costs incurred and charged by Haystack on or after the date of this Order for any work performed pursuant Paragraph 5 of this Order.

7. This Permanent Injunction meets all the requirements of Rule 65 of the Federal Rules of Civil Procedure.

8. No bond shall be required for entry of this Permanent Injunction.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction to enforce the terms of this Agreed Permanent Injunction and Order of Dismissal and the terms of the Parties' Settlement Agreement which shall become effective upon the entry of this Order.

IT IS FURTHER ORDERED that, as no further matters remain pending, this case shall be dismissed with prejudice, with each Party to bear his, her, or its own attorneys' fees and costs except as provided in Paragraph 6 above.

IT IS SO ORDERED:

Entered this 2nd day of February, 2022

BY THE COURT:

_____
ROBERT C. JONES
United States District Judge